Douglas W. OLEN, Plaintiff-Respondent,

v.

Frank K. PHELPS, Defendant,

PROFESSIONAL ACCOUNTING SERVICES, LTD., and Julie Phelps Dillon, Garnishees-Defendants-Appellants. †

Court of Appeals

*No. 93–3302. Submitted on briefs September 14, 1994.—Decided February 8, 1996.*

(Also reported in 546 N.W.2d 176.)

† Petition to review denied.

155

For the garnishees-defendants-appellants the cause was submitted on the briefs of *Eric S. Darling* of *Schmidt, Darling & Erwin* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Ralph A. Weber* of *Kravit, Gass & Weber, S.C.* of Milwaukee.

Before Eich, C.J., Sundby and Vergeront, JJ.

SUNDBY, J.   Garnishee defendants Professional Accounting Services (PAS) and its owner Frank K. Phelps and Julie Phelps Dillon appeal from a judgment entered September 20, 1993, in favor of Douglas W. Olen. The trial court found that Phelps had fraudulently conveyed assets to avoid garnishment, contrary to § 242.04(1)(a), STATS. It appointed a receiver to recover those assets. Defendants claim that the trial court's finding that Phelps fraudulently transferred assets is clearly erroneous. They further argue that the trial court erred when it made PAS's future profits subject to garnishment without further process. We conclude that the trial court's findings are not clearly erroneous and affirm the judgment in that respect. However, we further conclude that PAS's contingent future profits are not subject to garnishment until realized and reverse the judgment in that respect.

## BACKGROUND

### 1.  The Parties

a.   Plaintiff-Respondent Olen is a private investor who in the 1980s asked Phelps to invest money for him. He brought action in the United States District Court for the Eastern District of Wisconsin against PAS and Phelps to recover funds placed with Phelps. On October 16, 1991, the court entered a default judgment in favor of Olen in the amount of $213,600.75.

b.   Garnishee defendant-appellant PAS is an accounting firm in Watertown, Wisconsin. Prior to 1991, the firm was known by a series of other names and had various shareholders. However, Phelps is currently the sole shareholder and director.[1] He receives all of PAS's profits. PAS was not involved in the Olen investments. PAS is a party solely as a garnishee defendant under § 812.19(7), STATS.

## 2.   PAS Funds

PAS handles its recordkeeping informally, with no minute books or ledgers showing the transfer of funds between various bank accounts. A PAS check usually does not describe its purpose. The record shows that Phelps had control of PAS's funds. He had no personal bank account; he paid profits from PAS's operations to his wife's personal account and directly to his creditors to satisfy personal and business debts.

## 3.   Findings of the Trial Court

Mr. and Mrs. Phelps transferred PAS's Watertown office building and a Boca Raton condominium to their daughter, Julie Phelps Dillon, as a gift, although she was unaware of the gift until this action.

The trial court found that the conveyance of the Watertown office building to Dillon was fraudulent and declared the conveyance void. The court concluded that the pre-garnishment distributions of PAS profits directly to personal creditors and to Mrs. Phelps for

---

[1] No evidence is available other than Phelps's testimony as to the percentage of profits he received as a shareholder. PAS and its predecessor firm had no actual shares of stock. Instead, investment extended only to the purchase of basic office supplies and some real estate.

"household expenses" were fraudulent and directed the receiver to recover those profits.

The trial court made the judgment applicable to PAS's contingent future profits without further process.

## THE ISSUES

(1) Is the trial court's finding that Phelps conveyed the PAS office building to Dillon to hinder, delay or defraud a creditor clearly erroneous? We conclude that it is not.

(2) Is the trial court's finding that the distributions of PAS's profits by Phelps were fraudulent clearly erroneous? We conclude that it is not.

(3) Did the trial court correctly include in the judgment PAS's contingent future profits? We conclude that the trial court erred in this respect.

## STANDARD OF REVIEW

Issue (1) presents a mixed question of law and fact, issue (2) is factual, and issue (3) presents a question of law.

Findings of fact shall not be set aside unless clearly erroneous. Section 805.17(2), STATS.; *see also Chmill v. Friendly Ford-Mercury*, 144 Wis. 2d 796, 803, 424 N.W.2d 747, 750 (Ct. App. 1988).

The construction of a statute or the application of a statute to the undisputed or found facts presents a question of law. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758, 300 N.W.2d 63, 68 (1981). We are not bound by the trial court's conclusions of law and decide the matter *de novo. See First Nat'l Leasing Corp. v. City*

160

*of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

## I.

## TRANSFER OF THE OFFICE BUILDING

The trial court found that Mr. and Mrs. Phelps conveyed the Watertown office building to their daughter, Julie Dillon, with the intent to hinder, delay or defraud a creditor within the meaning of § 242.04(1)(a), STATS. Phelps argues that this finding is clearly erroneous. The statute provides:

> (1)   A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a)   With actual intent to hinder, delay or defraud any creditor of the debtor . . . .

A real estate conveyance is not fraudulent *per se*, but the circumstances surrounding a transfer may strongly suggest a fraudulent intent. The transfer of the Watertown office building from Mr. and Mrs. Phelps to their daughter was made less than two months after a meeting between Mr. Phelps and Olen to arrange payment of Phelps's debt, under threat of legal action. Further, Julie Dillon was unaware of the transfer, and PAS continued to pay the mortgage and taxes on the building as if it were still the owner. Finally, Dillon gave no consideration for the transfer.

PAS and Phelps argue that even if all of the elements of a fraudulent transfer are present, the office building is not subject to garnishment because if the conveyance is voided, the building will revert to PAS

and Phelps will have no ownership interest. The trial court concluded that declaring the transfer void would leave the asset free for future garnishment because PAS was Phelps's *alter ego*.

The trial court noted numerous unusual and questionable characteristics of PAS which support a conclusion that the corporation was Phelps's *alter ego*. He was PAS's sole shareholder and director. PAS handled all decisions on an informal basis and did not keep minutes of its meetings. Phelps treated PAS funds as his, and commonly directed PAS funds to satisfy both corporate and personal debts. He treated the corporate assets as his own. He used PAS funds to make the mortgage payments on both the firm's office building and his own properties. Phelps treated PAS as a corporation only when it was convenient. Phelps admitted that he had gifted the property to his daughter to provide a "nest egg" for her, while at the same time he claimed that he never owned the property.

The veil of a corporation may be pierced when the evidence shows that the corporation is merely the *alter ego* of its owner or owners:

> The general rule is that a corporation is treated as a legal entity distinct from its members and is not liable for the personal debts of a shareholder. However a shareholder's act will be treated as a corporate act and the existence of the corporation as an entity apart from the natural persons comprising it will be disregarded, if corporate affairs are organized, controlled and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice.

162

*Wiebke v. Richardson & Sons, Inc.,* 83 Wis. 2d 359, 363, 265 N.W.2d 571, 573 (1978).

■

"The alter ego doctrine enables a court to disregard the corporate form when it is used to accomplish an improper [or unlawful] purpose." *Select Creations, Inc. v. Paliafito America, Inc.,* 852 F. Supp. 740, 773 (E.D. Wis. 1994). A court will apply the following factors to determine whether the corporate form is a mere sham: failure to observe corporate formalities, non-payment of dividends, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, and the absence of corporate records. *United States v. Pisani,* 646 F.2d 83, 88 (3rd Cir. 1981). The *alter ego* doctrine can be applied in reverse, as the court in *Select Creations* explained:

> Although the alter ego doctrine is typically employed to pierce the corporate veil of a controlled entity to reach the assets of the controlling party . . . the doctrine can also be applied in reverse to reach the assets of a controlled entity. It is particularly appropriate to apply the alter ego doctrine in "reverse" when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party.

852 F. Supp. at 774.

Application of the "reverse" *alter ego* doctrine to pierce the corporate veil is supported by the facts found by the trial court: Phelps fraudulently conveyed title of the building to frustrate collection proceedings, and he manipulated the assets of the entity under his control, PAS, to avoid his own pre-existing liabilities. A case closely analogous is *United States v. Taylor,* 688 F. Supp. 1163 (E.D. Tex. 1987). In that case, a taxpayer

transferred title of real estate to his daughter, but continued to live on the property, did not pay rent, and continued to make the mortgage payments. The court found that the transfer was intended to delay, hinder or defraud the United States as a tax creditor, and declared the transfer void. *Id.* at 1164-65.

We conclude that the trial court correctly found that the office building is a profit owing to Phelps and is garnishable as such to satisfy the judgment against Phelps. The building may be described as a "profit" or an "asset" for the purposes of this analysis. If it is classified as a "profit," it is garnishable as a debt owed to Phelps. If it is an "asset," it is garnishable under the *alter ego* doctrine.

## II.

### THE PRE-GARNISHMENT TRANSFER OF FUNDS

The trial court found that PAS's distributions of pre-garnishment funds to Phelps's creditors were fraudulent transfers. It concluded that Phelps had arranged the transfers in anticipation of the garnishment action. The inadequate bookkeeping, the lack of a personal bank account by Phelps, and the transfers into various personal and company accounts pointed to an ongoing intent to delay, defraud or hinder collection attempts. The court stated that the totality of the circumstances surrounding the transfers supported the inference that they were fraudulent.

PAS argues that the distribution of profits directly to Phelps's creditors and his wife for "household expenses" constituted no more than a decision by Phelps as to which of his creditors would receive the profits of PAS. However, the trial court correctly found

164

that Phelps failed to show that he had a good faith intent to satisfy claims of creditors instead of an intent to shield his assets from the legitimate claims of his creditors. According to Phelps's logic, he could avoid legal process as long as he was choosing which creditors would be paid. Unfortunately for Phelps's theory, creditors may use legal process to enforce their just claims and the debtor may not avoid accountability by transferring his or her assets to delay or hinder that process.

PAS failed to show that the trial court's finding that it and Phelps transferred assets to avoid creditors' claims is clearly erroneous.

### III.

### FUTURE PROFITS OF PAS

In addition to voiding the fraudulent transfers, the trial court also made the contingent future profits of PAS subject to the judgment if the proceeds of the voided transfers did not satisfy the judgment. Contingent liabilities are not subject to garnishment. Section 812.19(1)(d), STATS. A contingent interest is one in which liability is not certain and absolute, but depends on some independent event. *Fico, Inc. v. Ghingher*, 411 A.2d 430, 436 (Md. 1980). We adopt the generally accepted test stated in the following decision:

> The only debts from a garnishee to a defendant which are subject to garnishment under the Alabama statute are those which may be made the basis of an action of debt or indebitatus assumpsit by the defendant against the garnishee, so that the test here is whether, at the time of service of the

writ or at some time subsequent thereto, the defendant had or will certainly have in the future such a cause of action against the garnishee.

*Schaefer v. Post & Flagg*, 10 F. Supp. 827, 828-29 (N.D. Ala. 1935).

A liability which is merely unmatured at the time of the garnishment action is subject to garnishment. One type of unmatured interest exists when there is no question about the fact of the garnishee's liability, although the amount of that liability may be uncertain. *Fico*, 411 A.2d at 436-37.

The difference between an unmatured obligation and one which is contingent has been explained as follows:

> The possibility that a condition subsequent may defeat the payment of a presently owing obligation has no effect on the availability of garnishment. If the debt has come into existence, a debtor-creditor relationship exists and the time and manner of payment are immaterial for the purpose of garnishment. It is the existence of the liability itself that must not be contingent.

Stephen L. Beyer, *Garnishment: Contingent Interests*, 47 MARQ. L. REV. 221, 223 (1963) (footnote omitted).

We conclude that the future profits of PAS are dependent on too many future events to be classified as merely unmatured. Before profits are owed a shareholder, the corporation must perform services, collect payments and cover all of its overhead expenses such as payroll, taxes and rent. We therefore reverse that part of the judgment which subjects future profits of PAS to garnishment without further process.

166

*By the Court.*—Judgment affirmed in part and reversed in part.