**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 14, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2614**

STATE OF WISCONSIN

Cir. Ct. No. **2020CV216**

IN COURT OF APPEALS
DISTRICT IV

---

GREG GRISWOLD,

    PLAINTIFF-APPELLANT,

V.

JONATHAN T. MILES,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

¶1 BLANCHARD, J. This case calls for consideration of the mechanism established by our supreme court that allows indigent people seeking

access to the courts to petition for court-ordered waivers of costs and fees incurred in litigation based on findings of poverty. *See* WIS. STAT. § 814.29 (2023-24).[1]

¶2      Greg Griswold, pro se on appeal, challenges a circuit court order denying his petitions for indigency waivers of his obligation to pay the fees for transcripts of circuit court proceedings related to prior appeals in this action, based on his alleged inability to pay due to poverty. The defendant in this action and the respondent on appeal, Jonathan Miles, takes no position regarding the waiver issue. The court denied Griswold's petitions for a waiver based on the court's determination that Griswold, at pertinent times, controlled assets worth hundreds of thousands of dollars and therefore was not entitled to a finding of poverty.

¶3      Griswold contends that this was error for two alternative reasons. First, Griswold argues that, under WIS. STAT. § 814.29, the circuit court was obligated to find that Griswold was unable to pay court costs and fees based on the uncontested fact that, at all pertinent times, he received means-tested public assistance. We conclude that § 814.29 allows a circuit court to consider not only the existence of means-tested public assistance but also the value of a petitioner's assets when considering whether the petitioner's allegation of poverty is untrue. In appropriate cases, a court may order payment of court costs and fees wholly or partially on the ground that the petitioner's assets are sufficiently substantial to render the allegation of poverty untrue, even if the petitioner proves receipt of means-tested public assistance.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

2

¶4      Second, Griswold asserts that the circuit court erred in determining that he controlled hundreds of thousands of dollars of assets and that this determination established that Griswold could afford to pay approximately $492 in court costs and fees.   We reject Griswold's arguments on this point as undeveloped because he fails to identify clearly erroneous factfinding or legal error by the court.

¶5      For these reasons, Griswold fails to establish a basis to reverse the circuit court's application of WIS. STAT. § 814.29 to his waiver petitions, and accordingly we affirm.

## BACKGROUND

¶6      Griswold, who was also pro se in the circuit court, commenced this action in 2020.   He brought claims against Miles, a real estate broker, regarding Grant County land that Griswold had purchased.   Over time, the circuit court issued a series of orders that resulted in the dismissal of each of Griswold's claims and of his operative complaint in April 2022.   Following the last of these orders, Griswold commenced the first of three appeals to this court in this action.

¶7      In connection with the first appeal, Griswold petitioned the circuit court for a waiver, under WIS. STAT. § 814.29, of his obligation to pay $308 in fees to obtain hearing transcripts.   *See **State ex rel. Girouard v. Circuit Ct. for Jackson Cnty.**,* 155 Wis. 2d 148, 153 n.3, 454 N.W.2d 792 (1990) ("Charges by [circuit court] reporters for transcripts are referred to and defined as fees by [WIS. STAT. § 814.69(1).]").   The petition included a form affidavit in which Griswold averred that he was the recipient of identified forms of means-tested public assistance.   Griswold's averments that he received means-tested public assistance

3

at pertinent times have never been contested, and they were consistently accepted as true by the circuit court.

¶8 In May 2022, the circuit court issued an order granting Griswold's petition on a "preliminary" basis, although the court explained that it might revisit the issue later. The court acknowledged that Griswold's undisputed receipt of means-tested public assistance qualified him, at least as an initial matter, for a waiver of costs and fees under WIS. STAT. § 814.29(1)(a) and (d)1. However, the court expressed the view that there was a "substantial question as to whether Mr. Griswold is indigent" for purposes of § 814.29(1) and (2). Specifically, while making the preliminary determination to grant the waiver request based on § 814.29(1), the court interpreted § 814.29(2) to provide authority for the court to deny the waiver request and to order Griswold to pay if the court ultimately found that Griswold controlled substantial assets. The court explained that, in "preliminarily" granting the waiver, the court would not at that time exercise what it viewed to be its authority under subsection (2) to consider denying the waiver request based on the assets factor. The court's preliminary decision allowed Griswold to pursue the first appeal in this court.

¶9 Griswold voluntarily dismissed the first appeal. In December 2023, following remittitur from the court of appeals, the circuit court issued an order requiring Griswold to pay the transcript costs that the circuit court had waived on an explicitly preliminary basis. This was based in part on the court's determination that, as stated in its prior order, the court was authorized to order payment based on the facts as the court understood them and applying WIS. STAT. § 814.29(2).

4

¶10    Griswold commenced a second appeal, challenging the circuit court's December 2023 order requiring him to pay the transcript fees.  In June 2024, this court issued a summary order dismissing Griswold's second appeal. *Griswold v. Miles*, No. 2022AP2099, unpublished op. and order (WI App June 20, 2024).  *See* WIS. STAT. RULE 809.23(3) (summary orders of this court are citable only to support an argument of claim preclusion, issue preclusion, or identify the law of the case).[2]

¶11    Following this second remittitur from this court, the circuit court sent Griswold a notice requesting payment of the transcript costs related to his first appeal, which had still not been paid.  Griswold requested a hearing, effectively renewing his petition to waive transcript fees related to his first appeal.

¶12    Griswold also filed a motion arguing that, in addressing the indigency issue, the circuit court should limit its review to admissible evidence adduced at the new hearing and that the court should not consider evidence that had been offered, or court findings that had been made, in hearings regarding Griswold's indigency in other circuit court cases.

¶13    In November 2024, the circuit court held a hearing at which it denied Griswold's motion to limit the scope of the relevant evidence.  The court said that

---

[2] In Griswold's favor, we assume without deciding that the law of the case doctrine does not bar his attempt in this appeal to raise arguments that he may have intended to raise in any of his prior appeals.  *See State v. Moeck*, 2005 WI 57, ¶18, 280 Wis. 2d 277, 695 N.W.2d 783 ("The law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" (quoted source omitted)); *State v. Stuart*, 2003 WI 73, ¶24, 262 Wis. 2d 620, 664 N.W.2d 82 (courts can "disregard" law of the case doctrine when "'cogent, substantial, and proper reasons exist'" to reconsider prior rulings in a case (quoted source omitted)).

it would treat evidence and court findings from other circuit court cases as creating a "baseline" from which to consider Griswold's latest waiver request, taking into account any changes in Griswold's financial circumstances over time.

¶14    With the scope of the proper background materials settled by the circuit court, Griswold represented the following to the court. He had been diagnosed with cancer. The illness had prompted him to arrange for all assets that were held in trust on Griswold's behalf to be placed in a new irrevocable trust for the benefit of Griswold's son. As a result, Griswold said, he was "not only indigent, but … destitute," apparently meaning in extreme poverty.

¶15    The circuit court rejected Griswold's renewed waiver petition on the grounds that Griswold continued to have control over significant assets even after the purported asset transfer.

¶16    Griswold filed a new petition for waiver of fees, this time requesting the waiver of the fee to obtain a transcript of the November 2024 hearing for purposes of pursuing what would become this appeal. Griswold also requested a circuit court hearing regarding this latest petition.

¶17    In December 2024, the circuit court issued an order rejecting this latest petition without holding a hearing. The court's order provided additional reasoning, both for rejecting Griswold's petition at the November 2024 hearing and for rejecting his latest petition, under the court's interpretations of WIS. STAT. § 814.29(1)(a), (1)(d) and (2).

¶18    Griswold appeals the circuit court's December 2024 order. The transcript of the November 2024 hearing is part of the record.

**DISCUSSION**

¶19    We begin by addressing Griswold's argument that, under WIS. STAT. § 814.29, the circuit court was not permitted to consider Griswold's assets as a basis to order Griswold to pay costs and fees, because it was undisputed that at all pertinent times he received means-tested public assistance.  After providing an overview of pertinent provisions in § 814.29, we explain our conclusion that § 814.29 allows circuit courts to require payment of costs and fees based wholly or partially on a determination that a petitioner has assets that allow the petitioner to pay costs and fees, even if the petitioner establishes that the petitioner receives means-tested public assistance.

¶20    Further below, we explain why we reject Griswold's challenges to the circuit court's determination that he controlled hundreds of thousands of dollars of assets at pertinent times and that this provided a basis to order Griswold to pay costs and fees.

¶21    Our interpretations and applications of statutes present issues of law that we review de novo.  *See **Warehouse II, LLC v. DOT***, 2006 WI 62, ¶4, 291 Wis. 2d 80, 715 N.W.2d 213.  This is true regardless of whether a statute was passed by the legislature or, as with pertinent aspects of WIS. STAT. § 814.29, was promulgated by our supreme court pursuant to its rule-making authority.  *See **Waters ex rel. Skow v. Pertzborn***, 2001 WI 62, ¶16, 243 Wis. 2d 703, 627 N.W.2d 497; WIS. STAT. § 751.12(1).  For both legislatively and judicially created statutes, "[t]he goal of statutory interpretation is to ascertain and give effect to the intent of the enacting body."  ***Waters***, 243 Wis. 2d 703, ¶16.

¶22 We review for clear error the circuit court's factual findings regarding the poverty of a petitioner under WIS. STAT. § 814.29. *See* *State v. Jacobus*, 167 Wis. 2d 230, 235, 481 N.W.2d 642 (Ct. App. 1992).

## I. Interpretation of WIS. STAT. § 814.29

¶23 We begin our overview of WIS. STAT. § 814.29 with subpart (1)(a), which addresses, as pertinent here, the topic of a circuit court's ability to waive costs and fees generally.[3] *See* *State ex rel. Hansen v. Circuit Ct. for Dane Cnty.*, 181 Wis. 2d 993, 995, 997-98, 513 N.W.2d 139 (Ct. App. 1994) (referring to permission to commence an action without payment of costs or fees as "waiver" of the costs and fees). It states in part that, "upon order of the [circuit] court," "any person may commence" an action in "any court" "without being required to give security for costs or to pay any service or fee." There is also the potential for waiver of the payment of costs and fees, or giving security for them, in connection with the commencement of "any … appeal." *See* § 814.29(1)(a); *Girouard*, 155 Wis. 2d at 150 (concluding that circuit courts may waive transcription fees requested by indigent appellants under § 814.29). The circuit court is to issue an order waiving costs and fees when the court finds that, "because of poverty[,] the person" commencing the action or appeal in the action "is unable to pay the costs of the action … or appeal therein, or to give security for those costs." *See* § 814.29(1)(a).

---

[3] We note that on the facts of this case, "the court" referred to is a circuit court, but under the rules of appellate procedure, appellants may file petitions or motions for waivers of appellate filing costs and fees under WIS. STAT. § 814.29(1) or (1m). *See* WIS. STAT. RULES 809.11(1), 809.801(7)(b). We do not intend to separately interpret any rules of appellate procedure in this opinion and we generally use "circuit court" as our default reference in this opinion, even when a rule might apply equally or at least in some manner to an appellate court.

¶24 A person seeking a waiver of costs and fees must "file in the court an affidavit in the form prescribed by the judicial conference." WIS. STAT. § 814.29(1)(b).[4] This affidavit in support of a waiver order must "set[] forth briefly the nature of the cause, defense or appeal and facts demonstrating his or her poverty." § 814.29(1)(b). "The court may deny the request for [a waiver] if the court finds that the affidavit states no claim, defense or appeal upon which the court may grant relief." § 814.29(1)(c).

¶25 WISCONSIN STAT. § 814.29(1)(d) states that, if the petitioner's "affidavit demonstrates any of the following," then the circuit court "shall make a finding of poverty" and accordingly issue a waiver order:

> 1. That the person is a recipient of means-tested public assistance, including aid to families with dependent children, relief funded by a relief block grant under [WIS. STAT.] ch. 49, relief provided by counties under [WIS. STAT. §] 59.53(21), medical assistance, supplemental security income, food stamps or benefits received by veterans under [WIS. STAT. §] 45.40(1m) or under 38 USC [§§] 1501 to 1562.
>
> 2. That the person is represented by an attorney through a legal services program for indigent persons, including, without limitation, those funded by the federal legal services corporation, the state public defender or volunteer attorney programs based on indigency.
>
> 3. That the person is otherwise unable, because of poverty, to pay the costs of the action, proceeding or appeal or to give security for those costs. In determining the person's ability under this subdivision to pay or give security for costs and fees, the court shall consider the person's household size, income, expenses, assets and

---

[4] The Judicial Conference has prescribed Form CV-410A, "Petition for Waiver of Fees and Costs – Affidavit of Indigency." *See* CIRCUIT COURT FORMS, https://www.wicourts.gov/forms1/circuit/index.htm (last visited Aug. 10, 2025).

debts[,] and the federal poverty guidelines under 42 USC § 9902(2).

§ 814.29(1)(d)1.-3. We use the following shorthand references for these provisions: subparts (1)(d)1.-3. are collectively "the (1)(d) categories"; subpart (1)(d)1. is "the public assistance category"; subpart (1)(d)2. is "the representation category"; and subpart (1)(d)3. is "the catchall category."

¶26 Summarizing regarding the (1)(d) categories, the public assistance and representation categories direct the circuit court to make a finding of poverty in two sets of circumstances that each involve a government or nonprofit agency setting and applying its own criteria for assessing poverty and the agency has deemed the petitioner to have satisfied those criteria.

¶27 The public assistance category involves "means-tested public assistance," and it illustrates what can constitute "means-tested public assistance" by giving a list of "include[d]" examples. *See* WIS. STAT. § 814.29(1)(d)1. For example, the public assistance category references "food stamps," which must include Wisconsin's federally funded administration of Supplemental Nutrition Assistance Program or "SNAP" benefits, known in Wisconsin as FoodShare. *See* WIS. STAT. § 49.79 ("Food stamp administration."); WIS. ADMIN. CODE § DHS 149.03(15) (Jul. 1, 2008) (noting that Wisconsin's "assistance program under 7 U.S.C. [§§] 2011 to 2029" is known as "the FoodShare Program").

¶28 Turning to the representation category, this is keyed to the provision of legal services explicitly provided to "indigent persons," again implicating a determination by an agency that a person is sufficiently poor to qualify for such services. *See* WIS. STAT. § 814.29(1)(d)2. Mirroring § 814.29(1)(d)1., the list of

pertinent legal services is not exclusive—in the words of § 814.29(1)(d)2., it lists examples "without limitation."

¶29    The catchall category provides an alternative for waiver petitioners who do not qualify under the other two categories, as signaled by the phrase "otherwise unable." Like the other two categories, the catchall category includes a standard for defining poverty created by an agency, namely, "the federal poverty guidelines under 42 U.S.C. [§] 9902(2)." *See* WIS. STAT. § 814.29(1)(d)3. But unlike the first two categories, the catchall category treats the federal poverty guidelines as but one factor to be considered as part of a holistic approach. The court is to consider the poverty guidelines along with the petitioner's "household size, income, expenses, assets and debts[,] and the federal poverty guidelines." *See* § 814.29(1)(d)3.

¶30    Thus, if a petitioner's affidavit demonstrates that the petitioner fits one of the first two categories, the court shall make a finding of poverty. Failing that, the court weighs the factors in the catchall category and makes a finding of poverty if these factors establish to the satisfaction of the court an inability to pay court costs and fees. *See* WIS. STAT. § 814.29(1)(d)1.-3.

¶31    But that is not the end of the analysis. WISCONSIN STAT. § 814.29(2) establishes circumstances in which a finding of poverty under any of the (1)(d) categories may be, in effect, reversed by the circuit court. Pertinent here, under § 814.29(2), the circuit court "may dismiss any action or proceeding"

11

or "require the payment of, or the giving of security for, costs, fees and service if the court determines that the allegation of poverty is untrue."[5]

¶32    Bearing in mind this background regarding WIS. STAT. § 814.29, the first issue is whether the circuit court could determine, under subsection (2), that Griswold's "allegation of poverty is untrue" due to his control over substantial assets, even though subpart (1)(d) directs that the court "shall make a finding of poverty" based on Griswold's receipt of means-tested public assistance.

¶33    Griswold argues that the only reasonable way to harmonize WIS. STAT. § 814.29(1)(d) with § 814.29(2) is to construe these provisions to mean that, if one of the (1)(d) categories is met and is not itself shown to be untrue, the circuit court is strictly required to make a finding of poverty and to order costs and fees waived.  Under this view, the court could determine that an "allegation of poverty is untrue" under subsection (2) only if the court finds that an allegation of fact specifically material to the application of the (1)(d) categories is untrue.  Here, Griswold points out, there was no basis for the court to find that his claim of qualifying for means-tested public assistance was untrue, and therefore the circuit court was required to issue an order waiving Griswold's obligation to pay the transcript fees.

¶34    In contrast, the circuit court here interpreted WIS. STAT. § 814.29(1)(d) and (2) to allow the court to require payment of costs in an

---

[5] For context, we note that WIS. STAT. § 814.29(2) also provides that the circuit court "may later require the payment of, or the giving of security for, costs, fees and service if the court determines that the [petitioner] no longer meets any of the requirements under" § 814.29(1).  But this ability to account for changing circumstances does not apply here because the facts relevant to Griswold's petition, including his undisputed receipt of means-tested public assistance, have been consistent at all times pertinent to this appeal.

additional circumstance. That is, the court interpreted subsection (2) to also permit a court to require payment based on a determination that—despite a petitioner's undisputed averment that the petitioner satisfied the public assistance category or the representation category—the allegation of the petitioner's poverty overall should be rejected as untrue based on a finding that the petitioner had sufficient assets to pay the costs and fees. Applying that rule here, the court rejected Griswold's petitions based a determination that he retained control over significant assets that allowed him to pay court costs and fees.

¶35 We agree with the circuit court's view. Interpreting the pertinent provisions of WIS. STAT. § 814.29 as a whole, we conclude that a circuit court may determine that an "allegation of poverty is untrue" when the court determines that a waiver petitioner controls assets sufficient to render the petitioner able to pay costs and fees, even when the court has already found, or has no basis to question, that the petitioner satisfies either the public assistance category or the representation category.[6]

¶36 In support of that conclusion, we note that, in drafting WIS. STAT. § 814.29(2) our supreme court used the broadly inclusive phrase "the allegation of poverty is untrue" without tying it to any particular aspect of § 814.29(1), including any of the (1)(d) categories or any of the elements of those categories. This contrasts with the other statement of subsection (2), which addresses when a

---

[6] We note that, given our interpretation of WIS. STAT. § 814.29(1) and (2), a circuit court could be asked to, or could on its own initiative, consider other kinds of financial resources available to a petitioner, besides the kinds of tangible assets at issue here, that are not considered under the public assistance category or the representation category. This could include sources of income that might not be considered by an agency when it applies its standards. In this opinion, however, we address only the effect of Griswold's assets, as determined by the circuit court, on the court's ability to order payment of costs and fees under subsection (2).

petitioner "no longer meets any of the requirements under sub[section] (1)." § 814.29(2). It would have been simple to qualify the phrase "the allegation of poverty is untrue" in a way that links it to one or more of the (1)(d) categories.

¶37 Further supporting our conclusion, the structure and content of WIS. STAT. § 814.29(1) and (2) convey an intent by the supreme court for circuit courts to efficiently arrive at an assessment of when a person is "unable to pay" court costs and fees because of "poverty." *See* § 814.29(1)(a), (b), (d)3., (2). The goal of efficiency is achieved in part by directing that the initial determination shall be based on the readily ascertainable standards in the first two (1)(d) categories, since they consist of standards applied by agencies and may involve relying strictly on a relatively simple metric such as income (however income might be specifically defined by an agency). It would appear that in many cases this initial determination will be the only consideration that a court needs to give to a party's claim of indigency.

¶38 But additional goals are reflected in the catchall category and the unambiguous language of WIS. STAT. § 814.29(2), noted above. In these provisions, the supreme court signaled an intent to allow circuit courts, when the circumstances dictate, to address the concept of poverty more holistically, not strictly limited by standards set by agencies and not necessarily limited to some particular measure of the person's income. These features of § 814.29 establish that courts are to make a finding of poverty under the relatively objective public assistance and representation categories, or the more holistic catch-all category, if any apply. But then, when it comes to an assessment of a petitioner's "allegation of poverty," the court is not obligated to ignore evidence of what the court might reasonably find to be substantial means that render the petitioner able to pay court costs and fees.

14

¶39    Expanding on this last point, the first two (1)(d) categories are somewhat fluid in nature, making it unlikely that the supreme court intended to rigidly bind circuit courts to determinations of eligibility based on any and all means-tested public assistance or representation benefits, no matter what the criteria for those services might be at a given time.  The two categories are fluid in two ways that would have been apparent to our supreme court in promulgating WIS. STAT. § 814.29.  First, each provides a non-exclusive list of indigency-related services.[7]  Second, as noted above, whether an individual service is enumerated or not, the conditions to qualify for the service can change over time.  For example, since our supreme court promulgated § 814.29(1)(d), the type of means-testing used to determine eligibility for FoodShare has varied.  Eligibility was initially based in part on assets, but in more recent times it has focused solely on income.[8]

---

[7] Our interpretation that the public assistance and representation categories are merely illustrative and not exclusive is based on the general rule that the word "includes" has a non-exclusive meaning, unless there is "textual evidence that the legislature intended" the word "includes" to be "a term of limitation or enumeration."  *See State v. Popenhagen*, 2008 WI 55, ¶¶43-44, 309 Wis. 2d 601, 749 N.W.2d 611.  The court further explained that when "includes" is used to enumerate relatively more specific examples of relatively more general terms, that word sheds light on the scope of the more general terms.  *See id.*, ¶¶46-48 & n.25.  To be clear, here there is no dispute that at all pertinent times Griswold received what WIS. STAT. § 814.29(1)(d)1. refers to as "food stamps," and therefore we are not called upon to address the scope of "means-tested public assistance" as illustrated by the statute's enumerated examples.  However, the overall structure of § 814.29(1)(d)1., including its apparently non-exclusive listing of public assistance sources, is relevant to our interpretation of other aspects of § 814.29.

[8] Historically, eligibility for FoodShare benefits depended in part on asset limits, such that a person with low income but sufficient assets did not qualify for benefits.  *See* 7 U.S.C. § 2014(g); WIS. STAT. § 49.79(1p)-(1r).  More recently, however, food stamp administration in Wisconsin has adopted "broad-based categorical eligibility," which has expanded the ability to receive benefits without testing assets under certain circumstances.  *See* 7 U.S.C. 2035(b)-(d) (permitting states to adopt "simplified" eligibility rules for state administration of federally funded SNAP benefits); § 49.79(7) (authorizing state department of health to pursue simplified food stamp program under federal law); WISCONSIN DEP'T OF HEALTH SERVS., FOODSHARE HANDBOOK, release 25-01, § 4.2.1 (Apr. 2025).

(continued)

¶40     To clarify, when a petitioner qualifies for services under the public assistance or representation categories, the fact of qualification as well as the circumstances that led to the qualification could well serve as relevant evidence to support the petitioner's allegation of poverty for purposes of the more holistic review that a court may undertake pursuant to WIS. STAT. § 814.29(2).  But here, we do not understand the circuit court to have affirmatively discredited or misunderstood Griswold's representations about how low his income was or about how its meager nature properly allowed him to qualify for multiple public benefits.  Further, Griswold does not argue that the court failed to take into account evidence of indebtedness on the assets that would have rendered them of low or no monetary value to him, assuming that he controlled them.  Rather, as discussed below, the court weighed facts regarding assets controlled by Griswold, which the court found were substantial, to determine that he could afford to pay court costs and fees based on his overall financial resources, even though he qualified for means-tested public assistance.

¶41     We understand Griswold to argue that the phrase "shall make a finding" in WIS. STAT. § 814.29(1)(d), when considered in light of the public assistance category, expresses supreme court's intent to prevent circuit courts from making inquiries that go beyond reliable assessments of income alone.  As part of this argument, he quotes a note by the Judicial Council, which the supreme court did not adopt but did order printed.  *See* Judicial Council Committee Note, 1993, § 814.29; S. CT. ORDER 93-15, 179 Wis. 2d xxxiii.  This note addressed the intent

---

In contrast, the state public defender tests indigency in part by reference to the person's assets.  *See* WIS. STAT. § 977.02(3); WIS. ADMIN. CODE § PD 3.03(2) (Aug. 1, 2013) (tying eligibility for public defender representation in part to an asset limit of $2,500, subject to partial exclusions of the petitioner's equity in real estate and vehicles).

behind the supreme court's amendments to § 814.29 in 1993, which included adding subpart (1)(d) to the statute. According to the note, evident purposes for the 1993 changes were to "simplify and make more uniform the procedure for determining when costs and fees for indigent persons should be waived by the court." *See* S. CT. ORDER 93-15, 179 Wis. 2d xxxiii. Griswold cites the note in support of an argument that his interpretation of § 814.29 better promotes the goal of creating a more uniform and simplified indigency procedure. This is so, Griswold contends, because his interpretation limits more strictly what a circuit court may inquire into about the finances of a waiver petitioner.

¶42    It is true that WIS. STAT. § 814.29(1)(d)1. and (1)(d)2. allow a circuit court to rely on assessments of financial means made by agencies offering benefits fitting those categories, without *requiring* the court to inquire further. *See* S. CT. ORDER 93-15, 179 Wis. 2d xxxiii ("To simplify the determination of indigency, detailed financial statements are not necessary if the person is receiving means-tested public assistance or legal services based on indigency."). However, for reasons we discuss above involving § 814.29(2), we conclude that it is not reasonable to interpret the language of § 814.29(1)(d) to *foreclose* circuit courts from inquiring into a waiver petitioner's assets when, as here, the court becomes aware of evidence that a waiver petitioner has substantial assets even though the petitioner receives means-tested benefits. Consistent with the purposes identified in the Judicial Council note, our interpretation leaves a uniform procedure,

17

described above, and adds clarity and simplicity to when a circuit court should make a finding of poverty.[9]

¶43    Moreover, even if we were to conclude that Griswold's narrower interpretation of WIS. STAT. § 814.29(1)(d) and (2) is one reasonable interpretation, the result would be that the statute is ambiguous, and we would resolve this ambiguity in favor of the interpretation we give above. This is because pertinent materials from the Wisconsin Judicial Council reflect that the drafters of current § 814.29 were concerned with avoiding the very result that Griswold advocates for here. *See Waters*, 243 Wis. 2d 703, ¶20 n.5 (supreme court "may look to Judicial Council materials in determining the meaning of statute promulgated under [the court's] rule-making authority"); *see also Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶¶13-14, 293 Wis. 2d 123, 717 N.W.2d 258 (court may look to "extrinsic sources such as legislative history to find legislative intent" when a statute is ambiguous or "to confirm the plain meaning"). Specifically, these materials demonstrate an effort to avoid a situation in which the waiver petitioner has ample assets to make payment, but the circuit court is prevented from ordering payment because the petitioner receives an income-based benefit that triggers a finding of poverty under subpart (1)(d).

¶44    Explaining further, in April 1993, the Judicial Council initially requested that our supreme court adopt a new version of WIS. STAT. § 814.29 in order to "simplify or clarify procedure and promote the speedy determination of

---

[9] The 1993 change to WIS. STAT. § 814.29, referenced in the Judicial Council note discussed above, added the current subparts (1)(b)-(d). Prior to the 1993 change, § 814.29(1) allowed circuit courts to waive the payment of costs and fees due a person's inability to pay due to poverty, but without any guidance regarding the meaning of poverty provided by the current (1)(d) categories. *See* § 814.29(1) (1991-92).

litigation upon its merits." *See* WIS. STAT. § 758.13(2)(a) (empowering Judicial Council in part to "advise the supreme court as to changes" to "rules of … procedure" that "simplify procedure and promote a speedy determination of litigation upon its merits").  Under this initially proposed version of the rule, the court would promulgate a separate statute specifying the form of the affidavit submitted by the waiver petitioner.  This form included boxes for the petitioner to check that roughly correspond to subparts (1)(d)1. through 3. in the current § 814.29.  But, regarding federal poverty guidelines, the form simply asked whether the affiant's income fell below the federal poverty threshold set in 42 U.S.C. § 9902, without referring to other factors unless the affiant earned income above the threshold.  While the Judicial Council's request was pending, a committee of the council—the committee of the state's chief circuit court judges—objected to the proposed rule on the ground that it "require[d] the [circuit] court to waive fees when the affidavit shows that the person's household income is below the federal poverty level."  The committee noted that "[s]ome chief judges were concerned that the federal poverty guidelines are based only on income, and might require waiver although the person had substantial assets."  In response to the committee's objection, the Judicial Council as a whole voted to amend the request to change § 814.29, proposing that the court adopt language substantially in the form of current § 814.29(1)(d)1.-3.  The court granted the amended request in October 1993.  *See* S. CT. ORDER 93-15, 179 Wis. 2d xxxi (eff. Jan. 1, 1994).

¶45    Griswold emphasizes that WIS. STAT. § 814.29(1)(d) uses the word "shall" in stating that a circuit court "shall make a finding of poverty" if one of the (1)(d) categories are met.  He argues that this reinforces his interpretation that § 814.29(1)(d) required the circuit court here to find that he was unable to pay court costs and fees due to poverty, especially given that other provisions of the

19

statute direct that circuit courts "may" take certain actions. *See State v. Villamil*, 2017 WI 74, ¶¶54-55, 59, 377 Wis. 2d 1, 898 N.W.2d 482 ("'shall' is presumed" to describe a mandatory action, especially when "may" is used elsewhere in the same statute, though "shall" can be interpreted as "directory" when necessary to carry out the legislature's intent). But this solves only half of the puzzle. The "shall" in subpart (1)(d) could be mandatory for purposes of an initial review, but it remains that subsection (2) permits the circuit court to require payment of costs and fees whenever it determines that "the allegation of poverty is untrue." Here, the circuit court was transparent in its approach at each stage in a manner that we conclude is consistent with the statutory provisions. The court preliminarily granted a waiver of Griswold's transcript costs from his first appeal while expressly notifying Griswold that the court intended to later revisit whether it would require payment of the costs under § 814.29(2).

¶46 In sum, we conclude that WIS. STAT. § 814.29(1)(d)1. does not prohibit a circuit court from determining that an allegation of poverty is untrue under subsection (2) when the circuit court finds that substantial assets render a petitioner able to pay court costs and fees.

## II. Factual Basis for Determining Allegation of Poverty Was Untrue

¶47 We now expand on the background summarized above in order to provide context for Griswold's challenge to the circuit court's determination that his allegation of poverty was untrue.

¶48 At the November 2024 hearing, Griswold represented that he had been diagnosed with lung cancer in April 2024. As a result, Griswold said, he had decided to take a major estate-planning step. This involved an irrevocable, "spendthrift" trust for which he was the sole beneficiary ("Griswold's trust").

Specifically, Griswold represented that he sought from the trustee, and was granted, a transfer of all Griswold's trust assets into a new, irrevocable trust held for the benefit of Griswold's son. As relief, Griswold renewed his request that the circuit court waive fees relating to his first appeal, which the court found to total $308.[10] Griswold also requested that the court waive fees associated with his second appeal, the value of which is less evident from the record, but which he asserts total $184.

¶49 The following are some of the circuit court's findings provided in its written order rejecting Griswold's petitions, all addressing events dating from before the court's decision, including the purported trust transfer. Griswold controlled 13 cars and trucks, which were owned either by Griswold personally, or by the Griswold trust (before the transfer to his son's trust). Griswold controlled between 45 and 50 boats, ranging in value "from $10,000 to $50,000 or more." The boats were "originally titled, if at all, in Mr. Griswold's individual name," with only some boat titles later transferred to the Griswold trust. Griswold had

---

[10] We briefly summarize a potential alternative basis to affirm the circuit court's rejection of Griswold's petition to waive $308 in transcript fees from the first appeal, which we need not resolve. The circuit court concluded that Griswold's decision to voluntarily withdraw the appeal was a concession that the first appeal could not have been a basis to grant relief, which itself can provide grounds to reject a petition to waive costs and fees. *See* WIS. STAT. § 814.29(1)(c); *State ex rel. Luedtke v. Bertrand*, 220 Wis. 2d 574, 578, 583 N.W.2d 858 (Ct. App. 1998) (standard for whether "a proposed action states a claim for relief" under § 814.29(1)(c) "is the same standard that is applied when considering a motion to dismiss in an ordinary civil case "for [f]ailure to state a claim upon which relief can be granted"), *aff'd by equally divided court*, 226 Wis. 2d 271, 594 N.W.2d 370 (1999), *superseded in part by statute as noted in* **Spence v. Cooke**, 222 Wis. 2d 530, 532, 587 N.W.2d 904 (Ct. App. 1998). In this appeal, the references that Griswold makes to this determination by the circuit court are difficult to track, and he does not develop a legally supported argument. However, given that we are obligated to address Griswold's arguments about transcript fees from the second appeal, we assume without deciding that the court's application of § 814.29(1)(c) does not provide an alternative basis to affirm the court's rejection of Griswold's petition to waive fees from the first appeal.

"an interest in" two parcels of Grant County real estate constituting eight acres in total, although the circuit court did not make a finding regarding the value of this real estate.[11]

¶50    The circuit court made specific findings regarding Griswold's exercise of control over these assets. These included, for example, Griswold's practices in: acquiring boats; repairing or dismantling boats for parts; and controlling proceeds from such sales, which Griswold did not deposit into a bank account for the Griswold trust. The court found that Griswold was not credible in asserting that the proceeds he accrued from liquidating some of the assets under his control were treated as funds belonging to the Griswold trust. Based on these findings, the court further found that Griswold "has access to hundreds of thousands of dollars of assets. He does in fact control those assets, transfer those assets, and in all respects treats those assets as his personal assets in all manners except name, and even in name only in some circumstances."

¶51    Based on these findings, the circuit court concluded that Griswold treated the Griswold trust as his alter ego, invoking a doctrine under which courts can disregard an entity "when it is used to accomplish an improper or unlawful purpose." *See Olen v. Phelps*, 200 Wis. 2d 155, 163, 546 N.W.2d 176 (Ct. App. 1996) (quoted source and alteration marks omitted). The alter ego doctrine applies

---

[11] The circuit court found that Griswold arranged to purchase the two parcels from the Griswold trust for a nominal value on contracts that he planned to default on, which would cause ownership of the parcels to revert to the trust. The court further found that Griswold did this in an attempt to create standing for him to pursue, as an individual, his claims against Miles regarding the parcels in this case, because he could not as a matter of law represent the Griswold trust in making claims regarding land owned by the trust. Later, despite the transfer of assets to his son's trust, Griswold represented to the court at the November 2024 hearing that he remained the vendee in the land contract regarding the two parcels, but that his son's trust had replaced the Griswold trust as the vendor.

to the relationship between corporate forms and individuals, *see id.*, but the circuit court reasoned that the doctrine also applies to trusts based on WIS. STAT. § 701.0810(2)-(3) (discussing the duty of a trustee to keep trust property separate from trustee property). Although the court did not extensively discuss Griswold's transfer of assets to the son's trust, the court extended its reasoning on the alter-ego topic to the son's trust as well. That is, the court determined that the transfer did not alter its findings regarding how Griswold exercised control over the assets at issue. Based on this, the court determined that the value of assets nominally held by the Griswold trust and his son's trust (in addition to those that Griswold held in his own name individually) needed to be weighed as part of the court's determination of whether Griswold was indigent for purposes of WIS. STAT. § 814.29. Given the significant value of these assets, the court determined that Griswold's "allegation of poverty is untrue."

¶52    With this additional background, we turn to Griswold's positions as best we understand them. To the extent that we do not address arguments which Griswold intends to make, it is because the arguments are too unclearly briefed to merit discussion. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments).

¶53    We do not discern an argument by Griswold that, assuming that we reject his other arguments on this topic, the court erred in finding that the total value of the assets under Griswold's control were more than adequate to allow him to pay court costs and fees. Instead, the thrust of Griswold's argument is that the circuit court erred in relying on evidence from other cases before the circuit court in reaching the challenged rulings in this case. We reject this argument as undeveloped. The only legal support that Griswold provides for this argument comes from jurisdictions outside Wisconsin and secondary authority that he fails

to link in any meaningful way to Wisconsin law. Griswold fails to account for Wisconsin statutes that allow a circuit court to take judicial notice of certain facts, and he also ignores case law that specifically relates to the court's "own records in another case." *See* WIS. STAT. § 902.01(2)(b), (3), (5) (circuit court, of its own accord, "may take judicial notice" of a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *Steven V. v. Kelley H.*, 2003 WI App 110, ¶23 n.9, 263 Wis. 2d 241, 663 N.W.2d 817 (noting that the unqualified rule prohibiting a circuit court from "tak[ing] judicial notice of its own record in another case" on a party's request had been overturned by our supreme court). Moreover, Griswold fails to apply any legal authority, Wisconsin-based or otherwise, addressing the specific context here, in which the circuit court added to the record of this case an order and transcript from another case addressing his indigency. *Cf. Perkins v. State*, 61 Wis. 2d 341, 346-47, 212 N.W.2d 141 (1973) (concluding that supreme court could not take judicial notice of an alleged conviction from another case "when that conviction has not been made a part of the record").

¶54 Griswold makes a series of confusing references to facts from this and other circuit court cases regarding the Griswold trust and also to statutory law regarding spendthrift trusts. His argument appears to be that it was not proper for the circuit court to consider assets held by the Griswold trust. However, he fails to develop an argument that would connect any aspect of trust law (or any other authority that we recognize) to the reasoning applied by the circuit court in the order that Griswold challenges in this appeal. For example, Griswold does not attempt to develop a legally supported argument challenging the circuit court's

application of the alter ego doctrine or its basis in the court's findings regarding Griswold's control over certain assets.[12]

¶55    Turning to the facts, setting aside Griswold's argument about considering evidence from other cases, he does not contend that any of the circuit court's factual findings were clearly erroneous.  In particular, he does not come to grips with the court's findings that Griswold exercised control over property worth hundreds of thousands of dollars, including findings that cast doubt on how much of that property was ever held by the Griswold trust and thus transferred to his son's trust.

¶56    The closest Griswold may come to attempting to address the circuit court's application of the alter ego doctrine or the court's related references to Griswold's control over substantial assets fails because it is based on a complete mischaracterization of the court's ruling.  Griswold asserts that the court ruled that courts can never grant petitions for cost waivers made by trust beneficiaries.  In fact, the court made no such statement and instead grounded its decision on the evidence bearing on whether Griswold had control over extensive assets, and the court did not take a blanket position about trust beneficiaries as waiver petitioners.

¶57    Griswold asserts that the circuit court's analysis ignored the transfer of assets held by his trust to his son's trust.  It is true that the court explained that it was disregarding this transfer for purposes of assessing Griswold's claim of

---

[12] Griswold repeatedly refers to his alleged lack of access to trust documents that the circuit court ordered Griswold to produce in another Grant County case addressing Griswold's indigency under WIS. STAT. § 814.29 (Hon. Robert P. VanDeHey, presiding).  However, Griswold does not explain how this alleged obstacle undermines the reasoning of the circuit court in this case that Griswold controlled substantial assets.

poverty, based on the alter-ego and control concepts. And, as just explained, Griswold fails on multiple levels to provide a reason to question the court's reliance on those concepts. Without citation to legal support or the record, Griswold asserts that the evidence relied upon by the circuit court from a previous hearing in another case was "stale," but he does not develop a legally supported argument demonstrating that the court clearly erred in weighing the evidence. Court decisions in this context can be based on factual circumstances that materially change over time, but Griswold does not show that the court here misconstrued or ignored material timing considerations.

## CONCLUSION

¶58     For all of these reasons, we affirm the circuit court's order rejecting Griswold's petitions for waiver of court costs and fees.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.